David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM PAULUS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OCERA THERAPEUTICS, INC., ECKARD WEBER, LINDA S. GRAIS, WILLARD DERE, STEVEN P. JAMES, NINA KJELLSON, ANNE M. VANLENT, and WENDELL WIERENGA,<br><br>Defendants. | Civil Action No. 5:17-cv-06876<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934** |

William Paulus ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.    This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Ocera Therapeutics, Inc. ("Ocera" or the "Company") against Ocera and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Ocera, the "Defendants") for their violations of

Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), 78t(a), and SEC Rule 14d-9, 17 C.F.R. 240.14d-9, in connection with the tender offer ("Tender Offer") by Mallinckrodt plc through its subsidiaries ("Mallinckrodt") to acquire all of the issued and outstanding shares of Ocera (the "Proposed Transaction").

2. On November 1, 2017, Ocera entered into a definitive agreement and plan of merger (the "Merger Agreement"), whereby each shareholder of Ocera common stock will receive $1.52 per share. Additionally, each Ocera share will be converted automatically into the right to receive one Contingent Value Right ("CVR"), which represents the right to receive the Contingent Consideration if the milestones set forth below are achieved on or before December 31, 2029:

   i. IV Milestone: Parent will be obligated to pay an aggregate amount equal to $10,000,000 upon the enrollment of the first patient in a Phase 3 clinical trial of an intravenous formulation of the Product (as defined in the CVR Agreement) by Parent, any of its affiliates or their respective licensee or sublicensee with respect to rights to develop or commercialize the Product (the "IV Milestone").

   ii. Oral Milestone: Parent will be obligated to pay an aggregate amount equal to $15,000,000 upon the enrollment of the first patient in a Phase 3 clinical trial of an oral formulation of the Product by Parent, any of its affiliates or their respective licensee or sublicensee with respect to rights to develop or commercialize the Product (the "Oral Milestone").

   iii. Product Sales Milestone: Parent will be obligated to pay an aggregate amount equal to $50,000,000 upon the first occurrence of the achievement of cumulative Product Sales (as defined in the CVR Agreement) in excess of $500,000,000, by Parent, any of its affiliates, or their respective licensee or sublicensee with respect to rights to develop or commercialize the Product (but not a distributor of the Product acting solely in the capacity as a distributor), or any combination thereto (the "Product Sales Milestone").

Based on the current capitalization information of the Company, the maximum aggregate payment per CVR is currently estimated to be $2.58. The CVR together with the $1.52 in cash represent the transaction consideration ("Consideration").

3. On November 9, 2017, in order to convince Ocera stockholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC"). In particular, the Recommendation Statement contains materially incomplete and misleading information concerning Ocera's financial projections, the

CLASS ACTION COMPLAINT

1  true value of the Consideration to shareholders, and the valuation analyses performed by the

2  Company's financial advisor, MTS Health Partners, LP ("MTS").

3      4.    The Tender Offer is scheduled to expire on December 8, 2017 (the "Expiration

4  Date"). It is imperative that the material information that has been omitted from the

5  Recommendation Statement is disclosed to the Company's stockholders prior to the forthcoming

6  Expiration Date so they can properly determine whether to tender their shares.

7      5.    For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin

8  Defendants from closing the Tender Offer or taking any steps to consummate the Proposed

9  Transaction, unless and until the material information discussed below is disclosed to Ocera

10  stockholders or, in the event the Proposed Transaction is consummated, to recover damages

11  resulting from the Defendants' violations of the Exchange Act.

12  **JURISDICTION AND VENUE**

13      6.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

14  Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

15  violations of Section 14(e), 14(d)(4) and 20(a) of the Exchange Act.

16      7.    Personal jurisdiction exists over each Defendant either because the Defendant

17  conducts business in or maintains operations in this District, or is an individual who is either

18  present in this District for jurisdictional purposes or has sufficient minimum contacts with this

19  District as to render the exercise of jurisdiction over Defendant by this Court permissible under

20  traditional notions of fair play and substantial justice.

21      8.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

22  78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an

23  effect in this District; (ii) Ocera maintains its primary place of business in this District; (iii) a

24  substantial portion of the transactions and wrongs complained of herein, including Defendants'

25  primary participation in the wrongful acts detailed herein, occurred in this District; and (iv)

26  Defendants have received substantial compensation in this District by doing business here and

27  engaging in numerous activities that had an effect in this District.

28

CLASS ACTION COMPLAINT

**PARTIES**

9.      Plaintiff is, and at all relevant times has been, a stockholder of Ocera.

10.      Defendant Ocera is a Delaware corporation and maintains its headquarters at 555 Twin Dolphin Drive, Suite 615, Redwood City, California 94065. Ocera is a clinical stage biopharmaceutical company focused on the development and commercialization of OCR-002 (ornithine phenylacetate) in both intravenous (IV) and oral formulations. OCR-002 is an ammonia scavenger and has been granted Orphan Drug designation and Fast Track status by the U.S. Food and Drug Administration (FDA) for the treatment of hyperammonemia and resultant hepatic encephalopathy (HE) in patients with acute liver failure and acute-on-chronic liver disease. The Company's common stock trades on the Nasdaq under the ticker symbol "OCRX".

11.      Individual Defendant Eckard Weber is a director of Ocera and is the Chairman of the Board.

12.      Individual Defendant Linda S. Grais is a director of Ocera and is the Chief Executive Officer of the Company.

13.      Individual Defendant Willard Dere is, and has been at all relevant times, a director of the Company.

14.      Individual Defendant Steven P. James is, and has been at all relevant times, a director of the Company.

15.      Individual Defendant Nina Kjellson is, and has been at all relevant times, a director of the Company.

16.      Individual Defendant Anne M. VanLent is, and has been at all relevant times, a director of the Company.

17.      Individual Defendant Wendell Wierenga is, and has been at all relevant times, a director of the Company.

18.      The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants".

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Ocera (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

20.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable. There are millions of shares of Ocera common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public stockholders of Ocera will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Recommendation Statement, in violation of Sections 14(e) and 14(d)(4) of the Exchange Act;

ii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to tender their shares based on the materially incomplete and misleading Recommendation Statement.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

CLASS ACTION COMPLAINT

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.    Background and the Proposed Transaction

21.    Ocera, incorporated on January 12, 1998, is a clinical-stage biopharmaceutical company. The Company is focused on acute and chronic orphan liver diseases. The Company is focused on the development and commercialization of its clinical candidate, OCR-002, for the treatment of hepatic encephalopathy (HE). OCR-002 is a molecule, ornithine phenylacetate, which functions as an ammonia scavenger. The Company relies on third-party manufacturers to produce bulk drug substance and drug products required for commercial use and for its clinical trials.

22.    Mallinckrodt, incorporated on January 9, 2013, develops, manufactures, markets, and distributes branded and generic specialty pharmaceutical products and therapies. The Company focuses on various therapeutic areas, such as autoimmune and rare disease specialty areas, including neurology, rheumatology, nephrology, ophthalmology, and pulmonology; immunotherapy and neonatal critical care respiratory therapies; analgesics and hemostasis products; and central nervous system drugs. The Company's segments include Specialty Brands and Specialty Generics. The Specialty Brands segment produces and markets branded pharmaceutical products and therapies. The Specialty Generics segment produces and markets specialty generic pharmaceuticals and active pharmaceutical ingredient (API) consisting of biologics, medicinal opioids, synthetic controlled substances, acetaminophen, and other active ingredients.

23.     On November 2, 2017, Ocera and Mallinckrodt issued a joint press release announcing the Proposed Transaction. The press release stated in relevant part:

STAINES-UPON-THAMES, United Kingdom, and REDWOOD CITY, CA, Nov. 2, 2017 Mallinckrodt plc (NYSE: MNK), a leading global specialty pharmaceutical company, and Ocera Therapeutics, Inc. (NASDAQ: OCRX), today announced that they have entered into an agreement under which Mallinckrodt will acquire Ocera, a clinical stage biopharmaceutical company focused on the development and commercialization of novel therapeutics for orphan and other serious liver diseases with high unmet medical need. Ocera's developmental product OCR-002, an ammonia scavenger, is being studied for treatment of hepatic encephalopathy, a neuropsychiatric syndrome associated with hyperammonemia, a complication of acute or chronic liver disease.

OCR-002 is a Phase 2 asset with both intravenous (IV) and oral formulations. Despite inability to meet statistical significance in its primary endpoint, Ocera's Phase 2 STOP-HE trial1 achieved secondary endpoints that revealed differentiated clinical impact, including demonstrated effect on lowering serum ammonia levels. Mallinckrodt believes that trial design elements, in part, drove the primary outcome and, on acquisition, will invest to establish the optimal dosing regimen prior to initiating a Phase 3 program. Mallinckrodt will have continued engagement with the U.S. Food and Drug Administration (FDA) to confirm the regulatory pathway to gain FDA approval and subsequently launch the IV formulation, expected by 2022, and the oral formulation, expected by 2024.

The FDA granted OCR-002 its Orphan Drug Designation, and the resulting seven years' exclusivity would be applied upon first approval of the drug. The FDA also granted its Fast Track designation, a process designed to facilitate development and expedite the review of drugs to treat serious conditions and fill an unmet medical need2. The European Medicines Agency (EMA) also granted Orphan Drug status to OCR-002. If approved, the drug will have substantial durability through its Orphan Drug status and additionally through intellectual property that extends to at least 20303.

"Hepatic encephalopathy can be a debilitating condition, affecting brain function and, in some cases, resulting in coma or death," said Steven Romano, M.D., Chief Scientific Officer and Executive Vice President of Mallinckrodt. "We look forward to bringing this much-needed treatment option to patients who suffer from this condition."

"We believe OCR-002 has the potential to help thousands of patients whose hepatic encephalopathy is insufficiently treated by current therapies," said Linda S. Grais, M.D., President and Chief Executive Officer, Ocera. "We're excited by the additional development capability and commercial reach that can be gained by becoming part of Mallinckrodt. With this focus, I'm confident this important treatment can be successfully brought to market."

CLASS ACTION COMPLAINT

\*\*\*

Commercialization

If approved, Mallinckrodt expects OCR-002 to be commercialized by the company's existing sales organizations. At launch, patient access to this unique treatment option would also be supported and enhanced by the company's strong relationships with hospital networks, insurance companies and group purchasing organizations. Mallinckrodt's existing infrastructure of clinical and medical affairs experts will also support approval and launch of both formulations of the product. Mallinckrodt will work with the Ocera development team to ensure smooth integration of the development and regulatory plan.

Financial Considerations and Closing

A subsidiary of Mallinckrodt will commence a cash tender offer to purchase all of the outstanding shares of Ocera Therapeutics common stock for $1.52 per share (approximately $42 million), plus one Contingent Value Right to receive one or more payments in cash of up to $2.58 per share (up to approximately $75 million) based on the successful completion of certain development and sales milestones.

Mallinckrodt expects dilution from the acquisition to adjusted diluted earnings per share by $0.25 to $0.35 annually beginning in 2018, assuming the expected 2017 close. Guidance on the impact of the acquisition to the company's GAAP14 diluted earnings per share has not been provided due to the inherent difficulty of forecasting the timing or amount of items that would be included in calculating such impact. Subject to customary closing conditions, the company estimates the transaction will close in the fourth quarter of 2017.

## II.    The Merger Agreement's Deal Protection Provisions Deter Superior Offers

24.    The Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for Ocera.

25.    First, the Merger Agreement contains a no solicitation provision that prohibits the Company or the Individual Defendants from taking any affirmative action to obtain a better deal for Ocera stockholders. The Merger Agreement states that the Company and the Individual Defendants shall not:

(i) solicit, initiate, knowingly facilitate or knowingly encourage any inquiries, proposals or offers that constitute, or that could reasonably be expected to lead to, an Acquisition Proposal, (ii) engage in, continue or otherwise participate in any discussions or negotiations with any third party regarding an Acquisition Proposal or any inquiry, proposal or offer that could reasonably be expected to lead to an Acquisition Proposal, or furnish to any third party information

8

or provide to any third party access to the businesses, properties, assets or personnel of the Company or any of its Subsidiaries, in each case in connection with an Acquisition Proposal or any inquiry, proposal or offer that could reasonably be expected to lead to an Acquisition Proposal, or for the purpose of encouraging or facilitating an Acquisition Proposal, (iii) enter into any letter of intent, agreement, contract, commitment or agreement in principle (other than an Acceptable Confidentiality Agreement in accordance with this Section 5.2) with respect to an Acquisition Proposal or enter into any agreement, contract or commitment requiring the Company to abandon, terminate or fail to consummate the transactions contemplated by this Agreement, (iv) approve, support, adopt or recommend any Acquisition Proposal, or (v) resolve or agree to do any of the foregoing.

26. Additionally, the Merger Agreement grants Mallinckrodt recurring and unlimited matching rights, which provides Mallinckrodt with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) four business days to negotiate with Ocera, amend the terms of the Merger Agreement, and make a counter-offer in the event a superior offer is received.

27. The non-solicitation and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will undoubtedly be deterred from expending the time, cost, and effort of making a superior proposal while knowing that Mallinckrodt can easily foreclose a competing bid. As a result, these provisions unreasonably favor Mallinckrodt, to the detriment of Ocera's public stockholders.

28. Further, the Merger Agreement provides that Ocera must pay Mallinckrodt a termination fee of $1,680,000 in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal. The termination fee provision further ensures that no competing offer will emerge, as any competing bidder would have to pay a naked premium for the right to provide Ocera stockholders with a superior offer.

29. Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

30. Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Ocera's stockholders receive all

CLASS ACTION COMPLAINT

1    material information necessary for them to cast a fully informed vote at the stockholder meeting

2    concerning the Proposed shares.

3    **III.    The Recommendation Statement Is Materially Incomplete and Misleading**

4        31.    On November 9, 2017, Defendants filed the Recommendation Statement with the

5    SEC.  The Recommendation Statement has been disseminated to the Company's stockholders, and

6    solicits the Company's stockholders to tender their shares in the Tender Offer.  The Individual

7    Defendants were obligated to carefully review the Recommendation Statement before it was filed

8    with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any

9    material   misrepresentations   or   omissions.   However,   the   Recommendation   Statement

10   misrepresents and/or omits material information that is necessary for the Company's stockholders

11   to make an informed decision concerning whether to tender their shares, in violation of Sections

12   14(e), 14(d)(4), and 20(a) of the Exchange Act.

13       32.    First, the Recommendation Statement fails to disclose the non-probability of

14   success adjusted financial projections for both IV and Oral Formulations. A company's

15   management has meaningful insight into their firms' futures that the market does not. Shareholders

16   cannot hope replicate management's inside view of a company's prospects. Thus, projected

17   financial information provided by company management are among the most highly-prized

18   disclosures by shareholders. Given the decisions made by the banker in performing their valuation

19   analyses, discussed in greater detail below, these financial projections are critical for Ocera

20   shareholders to understand the value of the Company.

21       33.    Second, on August 27, 2017 the Board approved management's revised financial

22   projections in light of feedback from potential partners. Yet, the Recommendation Statement only

23   discloses one set of projections to shareholders. Adjustments or revisions in management's

24   financial projections are material to shareholders. Valuation analyses are only as reliable as the

25   inputs a banker utilizes. Shareholders need to know what revisions were made to the financial

26   projections, so that they may judge if such revisions were fair, or, alternatively, made to palliate a

27   lower incoming offer price. The failure to include all sets of projections utilized during the course

28   of the sales process in materially misleading to shareholders.

34.     Third, the Recommendation Statement omits the components of the unlevered free cash flow projections. Investors are concerned, perhaps above all else, with the unlevered free cash flows of the companies in which they invest.  Under sound corporate finance theory, the value of stock should be premised on the expected unlevered free cash flows of the corporation. Accordingly, the question that the Company's shareholders need to assess in determining whether to tender their shares in favor of a transaction is clear – is the Consideration fair compensation given the expected unlevered free cash flows?  Unlevered free cash flows are a non-GAAP financial metric, so their calculation can vary from company to company. Given the importance unlevered free cash flows to shareholders and the potential for variation in their calculation, the failure to disclose all the components of the unlevered free cash flows renders the financial projections misleading.

35.     The omission of the above-referenced projections also renders the financial projections included on pages 38-40 of the Recommendation Statement materially incomplete and misleading.   If a recommendation statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

36.     Further, the Recommendation Statement inconsistently states the number of Ocera shares outstanding. At various points, the Recommendation Statement states that there are 26,514,134, 27.698 million, and 81.752 million shares outstanding. The number of shares outstanding has a direct impact on the value of the CVRs. Since each milestone results in a lump-sum payment, the number of shares that payment is divided into directly and significantly impacts the amount each shareholder might receive. The portion of the Recommendation Statement describing the *Contingent Value Rights Agreement* makes no mention of the number of shares used to calculate the $2.58 per share consideration. Ocera stockholders are required to decide whether they should forever relinquish their equity in the Company and forego the opportunity to

participate in the Company's future earnings and growth in exchange for the Consideration. Thus, the most crucial piece of information to them is the accurate value of the Consideration.

37.     On page 40, the Recommendation Statement states:

> In particular, for purposes of preparing the financial projections, the Company assumed that it would successfully implement an immediate equity financing plan to raise net proceeds of approximately $30.0 million through the issuance of approximately 54.0 million shares of Company common stock, representing total dilution of 67% to shares outstanding as of November 1, 2017.

Outside of a footnote in the *Discounted Cash Flow Analysis* section, there is no other mention of this stock issuance in the Recommendation Statement. A secondary equity offering of this magnitude has a tremendous impact on the Company. If this information is indeed accurate, then the Company will issue an amount of stock approximately double the current float at a severe *discount* to the current trading price. The execution of this potential equity financing will substantially affect the value of the Consideration, the value of Ocera stock, the cash balance closing requirements of the Merger Agreement, and valuation analyses performed by MTS. The failure to provide full and accurate account of the equity offering and its potential effects on the Consideration renders the Recommendation Statement materially incomplete and misleading

38.     Additionally, the Recommendation Statement fails to adequately inform shareholders of the true value of the Consideration. The Recommendation statement devotes ten pages to explaining how MTS derived its fairness opinion, but only one sentence on a more accurate value of the unadjusted per share Consideration. In that sentence, KBW states that the probability and present value adjusted Consideration is worth $1.99. However, the Recommendation omits what the probability of success for each milestone is, when it is likely to occur, or what rate was applied to the payment to discount it back to present value. These pieces of information are crucial, so that shareholders can understand the value they are receiving for their shares. The omission of complete and accurate details about the Consideration renders the Recommendation Statement materially incomplete and misleading.

39.     With respect to MTS' *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following key components used in the analysis: (i) the inputs and

1  assumptions underlying the calculation of the discount rate range of 18% to 22%, including all

2  WACC components; and (ii) the expiration date of the patent that justifies no calculation or

3  inclusion of a terminal value.

4      40.    These key inputs are material to Ocera stockholders, and their omission renders the

5  summary of MTS' Discounted Cash Flow Analysis incomplete and misleading.  As a highly-

6  respected professor explained in one of the most thorough law review articles regarding the

7  fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in

8  a discounted cash flow analysis a banker takes management's forecasts, and then makes several

9  key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff,

10  *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate

11  discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

12  
13  
14  
15  
16  
17  
18  
19  
> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

20  *Id.* at 1577-78.

21      41.    With respect to MTS' *Publicly Traded Comparable Companies* and *Selected*

22  *Acquisitions* Analyses, the Recommendation statement fails to disclose following material

23  information: (i) the reasoning for "*Net Cash Adjustment*" given that each company selected in

24  these two analyses had their own capital structure that was represented in their transaction and/or

25  enterprise values; and (ii) the reasoning behind using 81.752 million shares for the *Discounted*

26  *Cash Flow Analysis* and 27.698 million shares for these two analyses. This information has an

27  immense impact on the illustrative per share value ranges derived in these two analyses, and, thus,

28  is material to shareholders.

13

CLASS ACTION COMPLAINT

42.     In sum, the omission and/or misstatement of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violation of Section 14(e) of the Exchange Act)

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

45.     Defendants have issued the Recommendation Statement with the intention of soliciting Ocera stockholders to tender their shares.  Each of the Defendants reviewed and authorized the dissemination of the Recommendation Statement, which fails to provide material information regarding Ocera's financial projections and the valuation analyses performed by MTS.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).  The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

47.     The Individual Defendants were privy to and had knowledge of the projections for the Company and the details concerning MTS's valuation analyses. The Individual Defendants

CLASS ACTION COMPLAINT

1 were reckless in choosing to omit material information from the Recommendation Statement,

2 despite the fact that such information could have been disclosed without unreasonable efforts.

3    48.    The misrepresentations and omissions in the Recommendation Statement are

4 material to Plaintiff and the Class, who will be deprived of their right to make an informed decision

5 regarding whether to tender their shares if such misrepresentations and omissions are not corrected

6 prior to the Expiration Date.  Plaintiff and the Class have no adequate remedy at law.  Only through

7 the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from

8 the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9,17 C.F.R. § 240.14d-9)**

11    49.    Plaintiff incorporates each and every allegation set forth above as if fully set forth

12 herein.

13    50.    Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder

14 require full and complete disclosure in connection with tender offers.   Specifically, Section

15 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

19    51.    SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the

20 Exchange Act, provides that:

> Information required in solicitation or recommendation.  Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

25    52.    In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's

26 directors to:

CLASS ACTION COMPLAINT

1
2

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

3        53.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because

4   it omits material facts, including those set forth above, which omissions render the

5   Recommendation Statement false and/or misleading.

6        54.     Defendants knowingly or with deliberate recklessness omitted the material

7   information identified above from the Recommendation Statement, causing certain statements

8   therein to be materially incomplete and therefore misleading.  Indeed, Defendants undoubtedly

9   reviewed the omitted material information in connection with approving the Proposed Transaction.

10        55.     The misrepresentations and omissions in the Recommendation Statement are

11   material to Plaintiff and the Class, who will be deprived of their right to make an informed decision

12   regarding whether to tender their shares if such misrepresentations and omissions are not corrected

13   prior to the Expiration Date.  Plaintiff and the Class have no adequate remedy at law.  Only through

14   the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from

15   the immediate and irreparable injury that Defendants' actions threaten to inflict.

16

**COUNT III**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

17        56.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

18   herein.

19        57.     The Individual Defendants acted as controlling persons of Ocera within the

20   meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

21   officers and/or directors of Ocera, and participation in and/or awareness of the Company's

22   operations and/or intimate knowledge of the incomplete and misleading statements contained in

23   the Recommendation Statement, they had the power to influence and control and did influence and

24   control, directly or indirectly, the decision making of the Company, including the content and

25   dissemination of the various statements that Plaintiff contends are materially incomplete and

26   misleading.

27
28

16

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement by Plaintiff to be misleading prior to the date the Recommendation Statement was issued, and had the ability to prevent the issuance of the false and misleading statements or cause the statements to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants that stockholders tender their shares in the Tender Offer.  They were thus directly involved in preparing this document.

60.     In addition, as the Recommendation Statement sets forth, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the merger agreement.  The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), 14(d)(4) and Rule 14d-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

63.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

CLASS ACTION COMPLAINT

1
2
3
4

### RELIEF REQUESTED

5        WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class

6   and against the Defendants jointly and severally, as follows:

7        A.   Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff

8   as Class Representative and his counsel as Class Counsel;

9        B.   Preliminarily and permanently enjoining Defendants and their counsel, agents, employees

10  and all persons acting under, in concert with, or for them, from proceeding with, consummating,

11  or closing the Proposed Transaction, unless and until Defendants disclose the material information

12  identified above which has been omitted from the Recommendation Statement;

13       C.   Rescinding, to the extent already implemented, the Merger Agreement or any of the terms

14  thereof, or granting Plaintiff and the Class rescissory damages;

15       D.   Directing the Defendants to account to Plaintiff and the Class for all damages suffered as

16  a result of their wrongdoing;

17       E.   Awarding Plaintiff the costs and disbursements of this action, including reasonable

18  attorneys' and expert fees and expenses; and

19       F.   Granting such other and further equitable relief as this Court may deem just and proper.

20

21                         ### JURY DEMAND

22       Plaintiff demands a trial by jury.

23
24
25
26
27
28

CLASS ACTION COMPLAINT

1

DATED:  November 30, 2017
**OF COUNSEL**

2

**MONTEVERDE & ASSOCIATES PC**

3

Juan E. Monteverde
The Empire State Building

4

350 Fifth Avenue, Suite 4405
New York, New York 10118

5

Tel:  212-971-1341
Fax:  212-202-7880

6

Email: jmonteverde@monteverdelaw.com

7

*Counsel for Plaintiff*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

*/s/ David E. Bower*
David E. Bower

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC** 600
Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
Email:  dbower@monteverdelaw.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT